IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION AT KNOXVILLE

FILED

September 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| PAMELA FRANKLIN, | ) | HAMILTON CIRCUIT |
| | ) | |
| Plaintiff/Appellant | ) | NO. 03A01-9704-CV-00121 |
| | ) | |
| v. | ) | |
| | ) | HON. SAMUEL H. PAYNE |
| VENCOR HOSPITAL, | ) | JUDGE |
| | ) | |
| Defendant/Appellee | ) | |
| | ) | REVERSED and REMANDED |

Ronald J. Berke, Chattanooga, for Appellant.
E. Blake Moore, Chattanooga, for Appellee.

O P I N I O N

INMAN, Senior Judge

The complaint was dismissed on a Rule 12.03 motion for judgment on the pleadings. The plaintiff appeals, insisting that her complaint states a cause of action under the prevailing law in this jurisdiction. Our review of the findings of fact made by the trial court is *de novo* upon the record of the trial court. There is no presumption of the correctness of the decision of the trial court on a question of law. *NCNB Nat'l Bank v. Thrailkill*, 856 S.W.2d 150 (Tenn. Ct. App. 1993).

The complaint was filed in June 1995, alleging intentional infliction of mental distress resulting from the defendant's asserted outrageous conduct, described in this fashion: the plaintiff's mother was admitted to the defendant Hospital on June 17, 1994, where she died 12 days later. The plaintiff employed a pathologist to perform an autopsy, but the defendant refused to surrender its medical records of the deceased to him. On July 1, 1994, the plaintiff filed a complaint in Chancery Court seeking to compel the hospital to provide copies of its medical records pertaining to the deceased to facilitate the autopsy. An Order was entered accordingly, but the Hospital failed to produce all of the records. Following a hearing pursuant to a contempt citation, the Hospital, despite a warning from the Chancellor, still failed to produce all of the pertinent records.

An amendment to the complaint was filed in June, 1996. The plaintiff alleged that the defendant had given conflicting reasons for her mother's death, and that the blood and urine specimens should be analyzed by a pathologist to determine medication levels; she alleged that although the defendant assured her that these specimens would be transferred with the body for an immediate autopsy, they were destroyed to prevent an analysis, and the defendant thereafter persisted in covering up its negligence to the point where it aggressively defied an order of the Chancery Court to produce its records pertaining to the death of the plaintiff's mother. The complaint alleges that the defendant was held in contempt, but still refused to produce the requisite records.

The plaintiff alleged that the defendant's actions caused her severe physical and emotional distress for which she was treated both medically and psychologically, aggravating pre-existing conditions, and that she is entitled to damages for the outrageous conduct thus shown.

As heretofore shown, the complaint was dismissed for failure to state a claim upon which relief can be granted. A proper resolution of such a motion requires that we assume the truth of all relevant and material allegations and reasonable inferences drawn therefrom. *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn. 1975); *Holloway v. Putnam County,* 534 S.W.2d 292 (Tenn. 1976). Dismissal of the complaint is warranted only when no set of facts will entitle the plaintiff to relief, *Dobbs v. Guenther,* 846 S.W.2d 70 (Tenn. App. 1992); *Sullivant v. Americana Homes, Inc.,* 605 S.W.2d 246 (Tenn. App. 1980).

There can be no doubt that the plaintiff had the right to employ a pathologist to perform an autopsy to determine the cause of death of her mother. Continuing in this vein, there can be no doubt that time was of the essence, and the medical records pertaining to the patient, the fluids and tissue taken from the patient by the Hospital were indispensable to the autopsy. We assume as true that the Hospital refused to produce these vital elements, and when ordered by a Court of competent jurisdiction to do so, persisted in its refusal until its deceased former patient was interred and generally beyond reach of conventional autopsy.

2

In *C. D. Swallows v. Western Electric Company, Inc.,* 543 S.W.2d 581 (Tenn. 1976), the Supreme Court recognized the tort of outrageous conduct in this jurisdiction and limited its existence to instances (1) where the conduct of the defendant has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) where the conduct results in serious mental injury. Liability does not extend to mere insults, indignities, annoyances, threats, petty oppression, or other trivialities. *Bain v. Wells,* 936 S.W.2d 618 (Tenn. 1997); *Medlin v. Allied Investment Co.,* 398 S.W.2d 270 (Tenn. 1966).

It is not only alleged directly, but is reasonably inferable from the complaint, that the enquiries made by the plaintiff about her mother's death motivated the defendant to conceal or destroy evidence relating thereto, compounded by its failure or refusal to obey a lawful order of a Court of competent jurisdiction to produce relevant records and materials in accordance with the command of Tenn. Code Ann. § 68-11-304(a)(1) to furnish hospital records without unreasonable delay.

Whether conduct is so outrageous as to be intolerable in a civilized society is subjectively based and is dependent upon a litany of factors. In *Moorehead v. J. C. Penny Co., Inc.,* 555 S.W.2d 713 (Tenn. 1977), the defendant threatened to destroy the plaintiff's credit reputation. The Supreme Court held that the allegations stated a cause of action for outrageous conduct, stating that the applicable standards of 'extreme and outrageous' and not 'tolerated in a civilized society' are, like 'negligence,' primarily for application by a jury.

The refusal of the defendant to produce the records and materials was progressively exacerbative; from a routine request to a reliance on the statute to an action in Chancery Court and, in a sense, to the case at bar, with the requested information *still not forthcoming.* Under these circumstances,[1] we conclude that the complaint states a cause of action.

The issue of the plaintiff's standing to sue is pretermitted as having no relevance to a disposition under RULE 12.03.

---

[1]which, we reiterate, we only assume as true for the purpose of the Motion.

3

The judgment of dismissal is reversed and the case is remanded.  Costs are assessed to the appellee.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____(dissenting opinion)_____
Herschel P. Franks, Judge

# IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION



**FILED**

September 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

PAMELA FRANKLIN,                    ) C/A NO. 03A01-9704-CV-00121
                                    )
     Plaintiff-Appellant,        ) HAMILTON CIRCUIT
                                    )
v.                                  )
                                    )
VENCOR HOSPITAL,                    )
                                    )
     Defendant-Appellee.         )


## D I S S E N T I N G   O P I N I O N


I cannot concur with the result reached by the majority.  Essentially, plaintiff's complaint charges that the hospital violated its contract with her to furnish her copies of her mother's medical records, and that she was required to seek these records through the Chancery Court action, and when ordered to produce by the Chancellor the defendants failed to furnish all records, especially x-rays.  From this she concluded:

> The hospital's actions amounted to an intentional infliction of mental distress, and to outrageous conduct.

I cannot accept the majority's premise that the hospital's refusal to furnish the medical records as agreed with her or in violation of T.C.A. §68-11-304, which requires a hospital to furnish a patient or a patient's authorized representative, the patient's hospital records without unreasonable delay upon request, in writing, or its refusal to fully comply with the Chancery Court order constitutes outrageous conduct.[2]  In *Bain v. Wells,* 936 S.W.2d 618

---

[2]The standard describes such conduct as outrageous in character and so extreme in degree as to be beyond the pale of decency. *Swallows v. Western Electric Company, Inc.,* 543 S.W.2d 581 (Tenn. 1976).

(Tenn. 1997), Justice Drowota cites the Restatement of Torts 2d, §4611 as the standard

prevailing in this jurisdiction, which provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Simply stated, the tort of outrageous conduct is the intentional infliction of mental distress

upon another and as a general proposition, a breach of contract, violation of a statute, or

violation of a court order should not and, in my view, do not establish a basis for the tort

of outrageous conduct. But this seems to be the rationale relied upon by the majority to

conclude that the complaint alleges a cause of action.

I believe the following allegations which we are required to take as true,

could form a basis for outrageous conduct:

> She [plaintiff] saw vials of blood and urine at her mother's bedside which had been taken only moments before her death. She was assured that these blood and urine samples would be transferred with the body for an immediate autopsy. . . . In fact, the hospital delayed transferring the body of plaintiff's deceased mother to the pathologist . . . additionally, the hospital did not deliver the blood and urine samples taken shortly before death, and destroyed the samples so that they could not be checked.

Such wilful destruction could constitute outrageous conduct, but I do not believe the

plaintiff on the complaint as drawn can prove any set of facts to bring this alleged

destruction within the context of intentionally or recklessly causing the plaintiff severe

emotional distress.[3] Moreover, the record demonstrates plaintiff was in an adversarial role

with the defendant from the outset, and was represented by counsel. In this posture I do

not believe the plaintiff can establish any right to recover tortious damages.

---

[3]The complaint does not suggest when plaintiff was made aware of the destruction of these samples, nor how the information about the destruction impacted upon her mental state.

_____
Herschel P. Franks, J.